IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**STEVEN R. DEWITT,**

    **Plaintiff,**

**vs.**                                                                     **Case No. 4:21cv311-WS-MAF**

**WARDEN DAVID MADDOX,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, who is pro se, initiated this case after being released from the Florida Department of Corrections. He sues the warden of the Northwest Florida Reception Center [NWFRC] for failing to protect him. ECF No. 5. Defendant filed an answer, ECF No. 15, to Plaintiff's amended complaint, ECF No. 5, and discovery began in November 2021. ECF No. 16. After the conclusion of the discovery period, Defendant filed a motion for summary judgment. ECF No. 19. Plaintiff was advised of his obligation to file a response to that motion, ECF No. 20, and his response was timely filed. ECF No. 23. The summary judgment motion is ready for a ruling.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  As noted above, the parties were provided time to conduct discovery and no party requested an extension of that time.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,[1] if any,' which it believes demonstrate the absence of a genuine issue of material

---

[1] Pursuant to Rule 56(c), an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256, 1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial." Sconiers, 946 F.3d at 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

**The Relevant Rule 56(e) Evidence**

Plaintiff Steven DeWitt's complaint, signed under penalty of perjury,[3] stated that in April of 2018, "(reported) threats of bodily harm had been made" against him by approximately fifteen other inmates who were also housed at NWFRC.  ECF No. 5 at 7.  Because of those threats, Plaintiff said he was placed "under a Program Assignment (a requested protection [management] status) by the administrative office" of the NWFRC on April 4, 2018.  Id.  On that same day, Warden Maddox told Plaintiff, in the presence of security staff, that he personally "did not like" Mr. DeWitt.  Id.  Defendant Maddox also told Plaintiff that he "did not run shit at his facility" and he did not "give a damn if" Plaintiff had requested protective management.  Id.   Defendant further said that he would "see to it" that Plaintiff was seated among the other inmates when he was transferred and that he did not "give a damn" if he was assaulted.  Id.  Defendant Maddox told Plaintiff that if he attempted "to file a grievance," he would see to it that

---

[3] Statements made by a plaintiff in a verified complaint, sworn response to a motion for summary judgment, or sworn affidavit are properly treated as testimony in ruling on a summary judgment motion.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (noting that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.")).

Plaintiff was "transferred so far away from his assigned region that [he would not] see his family until [he] was released from the Department of Corrections." *Id.*

On the following day, April 5, 2018, Warden Maddox came to Plaintiff's cell to advise that he had instructed security "not to place Plaintiff under a protective status" when he was transferred and to seat him among the other inmates. ECF No. 5 at 8. Later that day, Plaintiff was assaulted by an inmate while being transferred to the Apalachee Correctional Institution. *Id.*

Plaintiff was provided medical treatment on April 5, 2018, following the attack. ECF No. 19-2 at 2. The medical record shows that Plaintiff told the medical providers that he was "on the bus" when two[4] inmates "jumped" him." *Id.* at 1. The nurse described Plaintiff's injury as "superficial" "upper back scratches," and the diagram indicates there were five total scratches. *Id.* at 2. Plaintiff's testimony was that he suffered seven lacerations and was "cut" with a "razor." ECF No. 5 at 8. The wounds were cleansed "with

---

[4] Plaintiff's complaint alleged that he was assaulted by one inmate. ECF No. 5 at 8. That is not, however, a genuine dispute of a material fact.

Case No. 4:21cv311-WS-MAF

normal saline," and it does not appear that Plaintiff required stitches. ECF No. 19-2 at 1.

Plaintiff submitted the declaration of Latricia D. Rogers with his response to the summary judgment motion. Ms. Rogers stated that she spoke with the Warden on a "three-way" telephone call at an unspecified date and time, during which Warrden Maddox advised that he had "become aware" of Mr. DeWitt's assault on April 5, 2018. ECF No. 23 at 10 (Ex. 1). According to Ms. Rogers, Warden Maddox went to speak with Plaintiff on either April 3rd or 4th, 2018, because Plaintiff was being disruptive. *Id.* Further, Warden Maddox spoke with Plaintiff at his cell on April 5, 2018, because Plaintiff was refusing to leave his cell and be transferred. *Id.* The Warden told Ms. Rogers he had ordered staff "to forcefully remove" Plaintiff from his cell and put him on the transfer bus. *Id.* at 11. Warden Maddox also acknowledged to Ms. Rogers that Plaintiff had "told him of his concerns and [his] reason for not wanting to be transferred" on April 5, 2018. *Id.*

Defendant Maddox submitted his own declaration with the summary judgment motion. ECF No. 19-1 (Ex. A). Defendant states that he is currently the Warden at Apalachee Correctional Institution but was the

Warden at NWFRC in April of 2018.  *Id.* at 1.  He says he has been made aware of Plaintiff's allegations, but categorically denies all of them.  *Id.* at 2.

More specifically, Maddox denies "having any conversation with" Plaintiff on April 4th or 5th as alleged.  ECF No. 19-1 at 2.  He denies ever threatening Plaintiff, denying him protective custody status, or interfering with his assigned status "which would have been determined by the classification department."  *Id.*  Warden Maddox said he did not arrange for Plaintiff to be assaulted during his transfer.  *Id.*  Further, Warden Maddox said he has "no personal recollection of Steven DeWitt whatsoever."  *Id.*

## ANALYSIS

### A.   First Amendment Claim

Plaintiff alleged that Defendant's actions violated his right to freedom of speech.  ECF No. 5 at 9.  Defendant argued that there were "no factual allegations to support a violation of Plaintiff's right to 'freedom of speech'" and said that claim would not be addressed.  ECF No. 19 at 2.  That assertion is not correct.

It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the

conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Furthermore, as explained in more detail below, Plaintiff's complaint alleged such a claim.

Defendant also argued that to the extent Plaintiff alleged "that Defendant verbally abused and threatened him, he fails to state a cognizable constitutional claim." ECF No. 19 at 9. In response, Plaintiff says that his evidence shows that Defendant "carried out his alleged threats made against Plaintiff." ECF No. 23 at 5. Thus, Plaintiff contends that there is a genuine dispute of material fact that precludes granting summary judgment in Defendant's favor.

There are several different types of First Amendment claims which may be raised by a prisoner, or former prisoner in a § 1983 action. Viable claims concern the denial of access to court, *see* Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), having legal mail opened outside his presence, *see* re Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008), being retaliated against because of the prisoner's use of the prison's grievance system, *see* Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005), violating a prisoner's right to the free exercise

of his religious beliefs, see Robbins v. Robertson, 782 F. App'x 794, 803 (11th Cir. 2019), or being threatened to deter a prisoner's exercise of his First Amendment rights. Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008).

Here, Defendant Maddox misinterpreted Plaintiff's claim, arguing that "verbal abuse and threats" by a prison official does not state a claim. ECF No. 19 at 9 (citing to Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008)). The holding in Herdandez - that "allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim" - pertained to an Eighth Amendment claim, not a First Amendment claim.[5] Although the case did include a separate First Amendment claim, it was based on the assertion that prison officials "read his legal papers." Hernandez, 281 F. App'x at 868 (holding "allegations did not make out a First Amendment claim"). Thus, Hernandez is not helpful to Defendant's position.

---

[5] It could also be argued that the case is not on point because, if Plaintiff's evidence is believed, Defendant did carry out the threat to not protect Plaintiff and put him with inmates who would cause him harm.

It has long been held that prisoners have a right under the First Amendment to file grievances and petition the government for redress of grievances. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008); Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir.1989); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). Moreover, prison officials violate the First Amendment when they threaten a prisoner for writing a grievance, or issue threats to prevent him from filing a grievance. Pittman v. Tucker, 213 F. App'x 867, 870-71 (11th Cir. 2007) (threats made to deter inmate's filing of a grievance violates the First Amendment).

The Eleventh Circuit has employed a 3-part test for such a First Amendment claim. Bennett, 423 F.3d at 1250. Under this test, a plaintiff must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on speech. Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007) (citing to Bennett). As to the first element, Plaintiff's right to file a grievance and seek protection from harm is a constitutionally protected right. Smith v. Mosley, 532 F.3d 1270, 1276

(11th Cir. 2008) ("an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement"); Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (holding that prison officials are required to "take reasonable measures to guarantee the safety of the inmates").

Plaintiff's testimony is that Defendant threatened him if he attempted to file a grievance.  ECF No. 5 at 7.  Defendant said he did not "give a damn if Plaintiff had requested a protective management status," and told Plaintiff he "did not run shit at his facility."  Id.  Construing those comments together, and giving all reasonable inferences to Plaintiff as the non-moving party, Plaintiff has shown that Defendant's threat was made, at least in part, because of Plaintiff's petitioning for protection.  It also reveals Defendant threatened Plaintiff to prevent him from further exercising his First Amendment right to file a grievance.

One question here is whether the Defendant's conduct adversely affected that speech - the second part of the 3-part test.  Bennett, 423 F.3d at 1250-51 ("that the defendant's retaliatory conduct adversely affected the protected speech" as quoted in Pittman, 213 F. App'x at 870).  In

Case No. 4:21cv311-WS-MAF

evaluating this claim, the proper inquiry is whether the challenged conduct "would likely deter a person of ordinary firmness from the exercise of his First Amendment rights." Pittman, 213 F. App'x at 870 ("plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights").

"[I]n the context of exhaustion, the Eleventh Circuit has said that serious threats of substantial retaliation, such as transferring the prisoner to a facility far away from his family, would deter a person of ordinary firmness from pursuing administrative remedies." Minnis v. Pittman, No. 3:15-CV-1200-J-39JRK, 2018 WL 3974112, at *17 (M.D. Fla. Aug. 20, 2018) (citing Turner, 541 F.3d at 1084-85). In the context of a First Amendment claim, it still remains true that a threat of transfer would be a deterrent to a reasonable person. Here, Plaintiff alleged that Defendant Maddox threatened him to deter him from filing a grievance. Defendant allegedly said that if Plaintiff attempted to file a grievance, "he would see to it that Plaintiff [was] transferred so far away from his assigned region that

Plaintiff [would not] see his family until Plaintiff [was] released" from custody. ECF No. 5 at 7. As the Eleventh Circuit has found - that threat was substantial and not insignificant.

Additionally, the threat was then coupled with Defendant's telling Plaintiff he would not be protected on the transfer bus and, ultimately, Plaintiff was attacked on the bus. Under these circumstances, a reasonable person would be deterred from filing further grievances. Plaintiff has demonstrated the violation of his First Amendment rights. Because the evidence is disputed as to whether or not Defendant made any of the threats, summary judgment must be denied as to the First Amendment claim.

**B.    Eighth Amendment Claim**

"[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--e.g., food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment. . . ." Helling v. McKinney, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993) (quoting DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.,

489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989)).  The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833, 114 S. Ct. at 1976 (quoted in Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616-17 (11th Cir. 2007)); see also Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) ("[I]t is well settled that a prison inmate has a constitutional right to be protected ... from physical assault by other inmates.").  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)).

     Defendant argues that even if Plaintiff's allegation is accepted that Defendant threatened Plaintiff about not providing protection during the transfer, the facts "still do not suffice to state a valid Eighth Amendment claim."  ECF No. 19 at 6.

     A prison official violates a prisoner's Eighth Amendment right to be protected against harm when two requirements are met.  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.  First, the prisoner must show that "he is

incarcerated under conditions posing a substantial risk of serious harm" and, second, he must show that prison officials were deliberately indifferent to that risk - that is, that the prison official had a "sufficiently culpable state of mind." *Id.* at 834, 114 S. Ct. at 1977; *see also* Rodriguez, 508 F.3d at 617. An Eighth Amendment claim has both an objective and a subjective component. Rodriguez, 508 F.3d at 617.

As for the objective component, Plaintiff's evidence shows that he faced a substantial risk of serious harm. His sworn testimony in the complaint was that after he received threats from "at least" fifteen inmates, he requested protective management status. ECF No. 5 at 7. That the threats were taken seriously is evident from the fact that Plaintiff "was placed under a Program Assignment." *Id.* The inference is that prison officials knew of Plaintiff's risk, placed him in protective management, and decided to transfer him for his protection. That is sufficient to show Plaintiff faced an objectively serious and substantial risk of harm.

"With regard to the subjective component of the Eighth Amendment claim, the Court in Farmer held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" 511 U.S. at

837, 114 S.Ct. at 1979 (quoted in Rodriguez, 508 F.3d at 617).  Here, Plaintiff has provided evidence showing Defendant knew Plaintiff had requested protection, but stated his intent to withdraw that protection during the transfer, and further stated he did not care if Plaintiff was assaulted. ECF No. 5 at 7.  Ms. Rogers' declaration also shows that Warden Maddox was aware of Plaintiff's fear of getting on the transfer bus on April 5, 2018. That evidence is disputed by the Defendant.[6]  Thus, there is a genuine dispute of fact which precludes granting summary judgment on Plaintiff's Eighth Amendment claim.

**C.   Physical Injury**

Much of Defendant's summary judgment motion is devoted to arguing that Plaintiff cannot recover compensatory damages[7] because he did not suffer a physical injury which is more than superficial.  ECF No. 19 at 9-14. The basis for Defendant's argument is federal law - 42 U.S.C. § 1997e(e).

---

[6] Defendant expressed that he never arranged for Plaintiff "to be physically assaulted by any inmate during his transfer to Apalachee Correctional Institution . . . ." ECF No. 19-1 at 2.  However, Plaintiff made clear that he does not contend "that Defendant arranged" his assault.  ECF No. 23 at 7.  Instead, Plaintiff's claim is that Defendant's actions "caused, or at the very least, contributed to Plaintiff being assaulted on April 5, 2018." Id.

[7] Plaintiff's requested relief is to be provided one million dollars for his "physical permanent scarring, and mental or emotional injury" caused by Defendant's actions. ECF No. 5 at 9.

That statute provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The state defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

Plaintiff was not incarcerated or detained when this case was filed. He initiated this case on July 26, 2021, while living in an apartment in Tallahassee, Florida. ECF No. 1 at 2. "It is confinement status at the time the lawsuit is 'brought,' i.e., filed, that matters," not the status "at the time of the injury." Harris v. Garner, 216 F.3d 970, 975 (11th Cir. 2000) (relying on Kerr v. Puckett, 138 F.3d 321, 322-23 (7th Cir. 1998)). The law is clear - Plaintiff's requests for monetary damages are not barred by § 1997e(e). Harris, 216 F.3d at 979-80 (concluding that "[b]ecause section 1997e(e) applies only to claims filed while an inmate is confined, it does not prevent a former prisoner from filing after release a monetary damages claim for

mental and emotional injury suffered while confined, without a prior showing of physical injury").

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, ECF No. 19, be **DENIED** and this case be **REMANDED** for further proceedings prior to setting the case for trial.

**IN CHAMBERS** at Tallahassee, Florida, on October 18, 2022.

 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**